U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

JUN 1 6 2006

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ORIGINAL

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | § | |
| ALLSTATE INDEMNITY COMPANY, | § | |
| and ALLSTATE PROPERTY & | § | |
| CASUALTY INSURANCE COMPANY, | § | |
| | § | |
| **Plaintiffs** | § | **3 0 6 - C V 1 0 6 7 - K** |
| | § | |
| vs. | § | Civil Action No. _____ |
| | § | |
| | § | |
| MICHAEL MANTAS, M.D., MICHAEL A. | § | |
| MANTAS, M.D., P.A. d/b/a NEUROLOGY | § | |
| CLINIC, d/b/a TENAMED, d/b/a | § | |
| METROSCAN RADIOLOGY, d/b/a | § | |
| ORTHOPEDIC CLINIC, d/b/a | § | |
| ANESTHESIOLOGY CLINIC, d/b/a | § | |
| MEDCENTRA, and d/b/a ASSOCIATED | § | |
| MEDICAL PROVIDERS, | § | |
| RED APPLE, L.L.C., d/b/a MEDCENTRA, | § | |
| ALCMAN MANAGEMENT, LTD., | § | |
| ALCMAN CORP, ALTHKOS, INC., | § | |
| METROSCAN IMAGING, L.L.C., | § | |
| FARSHAD BARKHORDAR (a/k/a SHAWN | § | |
| BARKHORDAR) d/b/a DALLAS | § | |
| NEURODIAGNOSTIC ASSOCIATES, and | § | |
| DALLAS NEUROGIAGNOSTIC | § | |
| ASSOCIATES, INC. (a/k/a DALLAS | § | |
| NEURODIAGNOSTIC ASSOCIATES) | § | |
| | § | |
| **Defendants** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Come now **Allstate Insurance Company, Allstate Indemnity Company,** and

**Allstate Property & Casualty Insurance Company,** hereinafter referred to as "Plaintiffs"

and complain of:

**PLAINTIFF'S ORIGINAL COMPLAINT  Page 1**

(1) **Michael Mantas, M.D.,**

(2) **Michael A. Mantas, M.D., P.A. d/b/a Neurology Clinic, d/b/a Tenamed, d/b/a Metroscan Radiology, d/b/a Orthopedic Clinic, d/b/a Anesthesiology Clinic, d/b/a/Medcentra, and d/b/a Associated Medical Providers,**

(3) **Red Apple, L.L.C., d/b/a Medcentra,**

(4) **Alcman Management, Ltd.,**

(5) **Alcman Corp.**

(6) **Althkos, Inc.**

(7) **Metroscan Imaging, L.L.C.,**

(8) **Farshad Barkhordar (a/k/a Shawn Barkhordar) d/b/a Dallas Neurodiagnostic Associates,** and

(9) **Dallas Nuerogiagnostic Associates, Inc. (a/k/a Dallas Neurodiagnostic Associates),**

hereinafter referred to collectively as "Defendants," and for such action would respectfully show the Court as follows:

## I.
## PREDICATE

1.      Plaintiffs seek to recover sums fraudulently procured by Defendants from Plaintiffs since at least 2001, by means of medical and chiropractic billings for unnecessary and unreasonable treatment, examinations, diagnostic tests, examinations and evaluations accompanying these tests, and medical devices. The treatment is supported by bogus narrative reports, generated by unlicensed individuals. Plaintiffs also request relief under the Federal Declaratory Judgment Act, 28 United States Code, Section 2201, to determine their duty to pay for purported examinations and diagnostic

tests, conducted by unlicensed and unqualified persons, of certain insureds and third parties making claim against insureds, and Plaintiffs' right to recover such payments previously received by Defendants.

2.     Plaintiffs would show this Honorable Court that Defendants are financially related.   Patients are put through a set course of treatment and referred between Defendants for diagnostic tests and evaluation, and prescribed electrical stimulation and "TENS" unit devices, regardless of medical/chiropractic need and necessity.   The particular neurological diagnostic testing performed is of no value, and conducted merely to enrich defendants and support inflated claims presented by the attorneys referring patients to Defendants.  The electrical stimulation devices are billed at a cost greatly in excess of their actual value, misrepresenting the nature and quality of the devices actually given to patients.

3.     Defendants then generate documents, such as narrative reports and HCFA-1500 billing forms, based on the unnecessary treatment and diagnostic testing, to substantiate the treatment, referrals, testing and the prescription of the electrical stimulation and TENS units.  These documents are presented to automobile insurers, such as Plaintiffs, directly or through personal injury attorneys referring the patients to Defendants.

4.     Plaintiffs would also show that the neurological diagnostic tests, and accompanying examinations and evaluations billed with the tests, are conducted by unlicensed and unqualified persons.   On information and belief, the referrals for the testing are at times made by lay persons, and not licensed medical doctors or chiropractors.  Plaintiffs would further show that they are under no obligation to pay the

costs for the fees associated with this purported diagnostic testing, and that they are entitled to reimbursement from Defendants for all such payments previously made.

## II.
## JURISDICTION AND VENUE

5.      Pursuant to Title 28, United States Code, Section 1332(a), this Court has subject matter jurisdiction because the amount in controversy in this civil action exceeds $75,000.00, exclusive of interest and costs, Plaintiffs are citizens and residents of the State of Illinois, and Defendants are citizens and residents of the State of Texas.  (See paragraphs 7 through 18 herein).  Plaintiffs would specifically show that they are incorporated under the laws of the State of Illinois and their principal places of business are in the State of Illinois.  Plaintiffs would specifically show that all Defendants are citizens and residents of the State of Texas.

6.      Venue is proper in this District pursuant to Title 28, United States Code, Section 1391 (a) and (c) in that a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this District, and Defendants' residences or principal offices are within this District.

## III.
## PARTIES

7.      Plaintiff, **Allstate Insurance Company,** is a corporation incorporated under the laws of Illinois, with its principal place of business in Illinois.

8.      Plaintiff, **Allstate Indemnity Company,** is a corporation incorporated under the laws of Illinois, with its principal place of business in Illinois.

9.      Plaintiff, **Allstate Property & Casualty Insurance Company,** is a corporation incorporated under the laws of Illinois, with its principal place of business in Illinois.

10.     Defendant, **Michael Mantas M.D**, is a citizen and resident of the State of Texas, and may be served at his place of business, 7203 John Carpenter Freeway, Dallas, Texas.

11.     Defendant, **Michael A. Mantas, M.D., P.A.**, doing business as "Neurology Clinic," "Orthopedic Clinic," "Anesthesiology Clinic," "Tenamed," "Metroscan Radiology," "Medcentra, and Associated Medical Providers is a professional association organized under the laws of the State of Texas, with its principal place of business in Dallas, Texas. Michael A. Mantas, M.D., P.A. may be served through its sole member and registered agent for service, Michael Mantas, 7203 John Carpenter Freeway, Dallas, Texas.

12.     Defendant, **Red Apple, L.L.C.**, doing business as Medcentra, is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Dallas, Texas. Red Apple, L.L.C. may be served through its registered agent for service, Michael Mantas, 7203 John Carpenter Freeway, Dallas, Texas.

13.     Defendant, **Alcman Management, Ltd.**, is a limited partnership organized under the laws of the State of Texas, with its principal place of business in Dallas, Texas. Alcman Management, Ltd. may be served through its registered agent for service, Mary Mantas, 5823 Deloache, Dallas, Texas.

14.     Defendant, **Alcman Corp.** is a corporation organized under the laws of the State of Texas, with its principal place of business in Dallas, Texas. Alcman Corp. may be served through its registered agent for service, Mary Mantas, 5823 Deloache, Dallas, Texas.

15.     Defendant, **Althkos, Inc.** is a corporation organized under the laws of the State of Texas, with its principal place of business in Dallas, Texas. Althkos, Inc. may be served through its registered agent for service, Mary Mantas, 5823 Deloache, Dallas, Texas.

16.     Defendant, **Metroscan Imaging, L.L.C.** is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Dallas, Texas. Metroscan Imaging, L.L.C. may be served through its registered agent for service, Thanasi Mantas, 7506 John Carpenter Freeway, Dallas, Texas, or 5823 Deloache, Dallas, Texas.

17.     Defendant, **Farshad Barkhordar**, also known as Shawn Barkhordar, and doing business as Dallas Neurodiagnostic Associates, is a citizen and resident of the State of Texas, and may be served at his place of business, 7203 John Carpenter Freeway, Dallas, Texas.

18.     Defendant, **Dallas Neurogiagnostic Associates, Inc**. (a/k/a Dallas Neurodiagnostic Associates, Inc.) is a corporation organized under the laws of the State of Texas, with its principal place of business in Dallas, Texas. Dallas Neurogiagnostic Associates, Inc. may be served through its registered agent for service, Farshad Barkhordar, 7203 John Carpenter Freeway, Dallas, Texas.

## IV.
## STATEMENT OF FACTS

### Organization of Defendant Entities

19.     Articles of Association of Defendant Michael A. Mantas, M.D., P.A. ("Mantas PA") was filed with the Texas Secretary of State on September 29, 1994.  Defendant Michael Mantas, M.D. ("Mantas") is the sole member (owner) and officer of Mantas MD, PA.

20.     Mantas has represented that Mantas PA. does business as "Medcentra" and "Associated Medical Providers."  Assumed name documents filed with the Dallas County Clerk show Mantas PA filed an assumed name certificate to do business as "Associated Medical Providers" on October 2, 1994.

21.     The articles of organization of Red Apple, L.L.C. ("Red Apple") were filed February 2, 2000.  Mantas and his wife, Mary Mantas, were listed as managers, and Mantas as the registered agent.  On September 12, 2000, the articles were amended and Mantas' son, Thansi Mantas, was named as the sole manager.  However, a 2004 franchise tax report is signed by Mary Mantas, as "manager."  Red Apple filed an assumed name certificate with the Secretary of State on May 14, 2001, to do business as "Medcentra."

22.     The Certificate of Limited Partnership of Alcman Management, Ltd. ("Alcman Management") was filed with the Texas Secretary of State on December 29, 1995.  The articles show its general partner is Althkos, Inc., whose president is Mary Mantas.  Alcman Corp. is a limited partner.  Mary Mantas is also president of Alcman Corp.

23.     The Articles of Incorporation of Alcman Corp. was filed with the Texas Secretary of State on June 25, 1991.  The Articles of Incorporation of Althkos, Inc. were filed with the Texas Secretary of State on October 17, 1994.

24.     On information and belief, neither Mary Mantas or Thansi Mantas have ever been licensed as a medical doctor, osteopathic doctor, or chiropractor, in Texas or any other jurisdiction.

**A.     The Mantas Clinics**

25.     In the period at issue, Mantas, Mantas PA, Red Apple, Alcman Management, and/or other Defendants have conducted business through clinics (the "Mantas Clinics") in the Dallas/Fort Worth Metroplex, directly or through the assumed names "Medcentra" and/or "Associated Medical Providers."  There are currently eight such clinics -- Fort Worth Rehab, MedCentra (f/k/a Rehab Central), Irving Injury, Carrollton Injury, Buckner Medical,

Rehab North (a/k/a Metroscan), Six Flags Clinic, Rehab South. Various clinics have moved and/or changed their names at various times.

26. Mantas has represented that Mantas PA conducts business under the individual clinic names. However, it appears the clinics are operated through the assumed business names Medcentra and/or Associated Medical Providers. As set forth in paragraphs 20 and 21 above, Mantas PA filed an assumed name document to do business as Associated Medical Providers, and Red Apple filed an assumed name document to do business as Medcentra.

27. In the period at issue, the Mantas Clinics, under their present or former names (i.e. Buckner Medical Clinic, Rehab Central, Rehab North, Back to Health, etc.), have also been assumed business names of Alcman Management. Alcman Management filed these assumed name records with the Clerks of Dallas and Tarrant County in 1996 through 1999. The records are signed by Mary Mantas, as president of the managing general partner, Althkos, Inc.[1]

28. However, Facility Application Forms and Facility Renewal Forms filed in regard to the Mantas Clinics with the Texas Board of Chiropractic Examiners in 2001 and in subsequent years list Mantas, individually, as sole owner of the clinics.

**B. Metroscan Radiology/Metroscan Imaging**

29. Mantas has represented that Metroscan Radiology is another assumed business name of Mantas PA.

---

[1] Assumed name documents filed with the Texas Secretary of State show the clinics were assumed name businesses of Alcman Corp., a limited partner of Alcman Management, in an earlier period. Alcman Corp. abandoned the assumed business names in 1996. Mary Mantas signed the documents of abandonment as representative for Alcman Corp.

**PLAINTIFF'S ORIGINAL COMPLAINT  Page 8**

30.     The articles of organization of Metroscan Imaging, L.L.C., were filed with the Texas Secretary of State on November 22, 2000.  The articles list Mantas son, Thanasi Mantas, as registered agent and sole manager and organizer.

31.     However, Facility Application Forms and Facility Renewal Forms filed in regard to Metroscan with the Texas Board of Chiropractic Examiners in 2001 and subsequent years list Mantas, individually, as sole owner of the Metroscan.

32.     Further, assumed name documents filed with the Clerk of Dallas County on January 8, 1996 show Metroscan Radiology as an assumed business name of Alcman Management.[2]

33.     Metroscan Radiology and Metroscan Imaging are hereinafter collectively referred to as "Metroscan."

**C.     Tenamed**

34.     Mantas has represented that Tenamed is another assumed business name of Mantas PA.

35.     However, Alcman Management filed an *Assumed Name Certificate* with the Dallas County Clerk on January 8, 1996, to do business as Tenamed.  The certificate was signed by Mary Mantas as registered agent of Alcman Management.[3]

36.     Further, assumed name documents filed with the Dallas County Clerk show that the name "Tenamed" is, or was, also:

---

[2] The records also show Metroscan Radiology was an assumed business name of Mary Mantas in the period November 1991 through November 1994.  And an earlier, 1988 assumed name filing shows Metroscan as an assumed business name of Mantas.

[3] The December 29, 1995 *Certificate of Limited Partnership of Alcman Management, Ltd.* filed with the Texas Secretary of State shows its general partner is Althkos, Inc., whose president is May Mantas.  Alcman, Inc. is a limited partner of Alcman Management Ltd.  Mary Mantas is also President of Alcman, Inc.

a.  An assumed business name of Mantas, individually (an assumed name certificate was filed September 29, 1990)

b.  An assumed business name of Alcman Corp., in the period December 5, 1994 through February 15, 1996. Mary Mantas is listed as Alcman's registered agent in the *Assumed Name Certificate*, and the *Statement of Abandonment of Assumed Name* was signed by Mary Mantas.

37.  Additionally, articles of association for "Tenamed, P.A." were filed with the Texas Secretary of State in April 1997, which listed Mantas as registered agent and sole original member and director. Tenamed, P.A. was later voluntarily dissolved.

**D.  Neurology Clinic**

38.  Mantas has represented that Neurology Clinic is also an assumed business name of Mantas PA.

39.  However, Alcman Management filed an *Assumed Name Certificate* with the Dallas County Clerk on January 8, 1996, to do business as the Neurology Clinic. The certificate was signed by Mary Mantas as registered agent of Alcman Management.

40.  Assumed name documents filed with the Dallas County Clerk show that, the Neurology Clinic is, or was in the past, also:

a.  An assumed business name of Alcman Corp., in the period December 5, 1994 through February 15, 1996. Mary Mantas is listed as Alcman's registered agent in the *Assumed Name Certificate*, and the *Statement of Abandonment of Assumed Name* was signed by Mary Mantas.

b.  An assumed business name of Mary Mantas, individually. Assumed name certificates were filed by Mary Mantas on November 19, 1991 and November 7, 1994.

**E.    Other 'Mantas' Entities**

41.    Mantas has represented that other assumed business names of Mantas PA include, or have recently included Orthopedic Clinic and Anesthesiology Clinic.

42.    However, assumed name documents filed with the Dallas County Clerk show that, at least some time in the past, Anesthesiology Clinic was the assumed business names of Mantas' wife, Mary Mantas.

**F.    Dallas Neurodiagnostic Associates**

43.    The Articles of Incorporation of Dallas Neurogiagnostic [sic] Associates, Inc. was filed with the Texas Secretary of State on May 31, 2002. The entity is referred to as Dallas Neurodiagnostic Associates.

44.    Pursuant to the 2005 state court deposition testimony of Defendant Farshad Barkhordar, a/k/a Shawn Barkhordar ("Barkhordar"), Barkhordar and Arash Sarabi were the initial shareholders of the corporation, and Barkhordar purchased Sarabi's interest and became sole shareholder in December 2003.

45.    On August 30, 2004, Barkhordar, individually, filed an assumed name certificate with the Clerk of Dallas County Texas, for the business name "Dallas Neurodiagnostic Associates."

**V.**
**Defendants' Operations**

46.    The Mantas Clinics' patients are generally referred to the clinic by a personal injury lawyer, or an employee of the lawyer. Some of the patients are treated under 'universal'

letters of protection (LOPs), covering present and future clients of the referring lawyer. The letters of protection concern not only treatment at the Mantas Clinic, but also charges incurred at any entity owned by Mantas, Mantas PA, Red Apple, and/or Alcman Management to which the patient is referred, such as Neurology Clinic, Tenamed, and Metroscan.

47.     The Mantas Clinics 'build up' the patient's prospective personal injury claim through a course of unnecessary treatment and referrals for diagnostic testing.

48.     The patients referred to the Mantas Clinics include persons purportedly injured in automobile collisions, who make claims against Plaintiffs' insureds for alleged negligent operation of automobiles. The patients also include persons who have automobile insurance policies with a Plaintiff, and who bring claims for Personal Injury Protection (PIP) benefits, or for uninsured or underinsured motorist coverage.

**A.      The Clinics**

49.     Chiropractors are hired by Defendants to work at the clinics and examined and treat patients.

50.     The Mantas Clinics, as well as Metroscan, are in fact registered as chiropractic facilities with the Texas Board of Chiropractic Examiners. As noted above, the facility registrations list Mantas, individually, as sole owner of the clinics and Metroscan.

51.     The automobile collision patients are put through a 'canned' course of treatment, generally consisting of "massage," hot or cold packs, electrical stimulation, and exercises.

52.     At times, patients are billed for neuromuscular reeducation. Aside from lack of reasonableness and necessity, no treatment that could be considered 'neuromuscular

reeducation' is provided. According to Dr. Sami Hanna, M.D., during a November 2005 deposition, this 'neuromuscular reeducation,' consisted of ultrasound treatment.

53.     At times, medical doctors purport to examine the patients at the Mantas Clinics. Such medical doctors during the period at issue include Burt Hyde, M.D., Sami Hanna, M.D., Robert Cassella, M.D., and Benigno Buentipo, M.D. These medical doctors appear to be semi-retired.

54.     In the period at issue, the medical doctors are, or have been, paid on a 'contract' basis by Mantas, Mantas PA, Red Apple, Alcman Management, and/or other Defendants under the MedCentra or Associated Medical providers assumed business name(s).

55.     On information and belief, while each Mantas Clinic has a 'full time' chiropractor assigned to the clinic, the clinics do not have full time medical doctors. While a medical doctor may examine a patient on occasion, the majority of examinations, treatment, and referrals are done or made by the chiropractor assigned to the clinic.

56.     At various times, 'examinations' are performed on patients, and billed in HCFA form 1500s under captions such as "Initial Visit," "Office Visit," and "Release." The initial visit and release are routinely billed under CPT Code 99215. This coding is the highest level examination, and its use represents, and requires, at least two of the following three key components: a comprehensive history, a comprehensive examination, and medical decision making of "high complexity." Usually, the presenting problems justifying such examinations are of moderate to high severity, and the physician typically spends forty (40) minutes of 'face to face' time with the patient or the patient's family. Many of the "office visit" examinations are billed at CPT Code level 99214, which also represents an extensive examination – a detailed history, a detailed examination, and medical decision making of

moderate complexity, with presenting problems of moderate to high severity and typically twenty five minutes of "face to face" time with the patient or the patient's family.

57.     Narrative "medical reports" are issued under the name of the individual Mantas Clinic, under the printed name of a medical doctor such as Dr. Hanna.  Among other matters, these reports contain one or more of the following:

>   a.      Findings concerning supposed symptoms;
>
>   b.      Statements of treatments and medications;
>
>   c.      Findings concerning Radiological and Neurological diagnostic tests;
>
>   d.      A diagnosis;
>
>   e.      A "disability" statement, concerning lost work time and that the time lost was reasonable and necessary in regard to the treatment of supposed injuries;
>
>   f.      Recommendations of future treatment, including refills of prescription medication, MRIs, and orthopedic or neurological consultations; and
>
>   g.      A prognosis, which includes matters such as expected future conditions and complaints, the possibility that future testing, treatment, or even surgery may be required, and the amount of future anticipated medical costs.  The prognosis section also includes a statement that all the services rendered were medically reasonable and necessary.

58.     The reports misrepresent that they are dictated by the medical doctor whose printed name appears on the report.  In fact, the medical doctors are not involved in the drafting of the reports.

59.     The reports are generated by report writers at the Defendants' corporate business office.  These report writers are not associated with the treatment provided to the patients,

**PLAINTIFF'S ORIGINAL COMPLAINT  Page 14**

and therefore make findings representing matters such as those set forth in paragraph 57 above, including diagnosis, prognosis, and the need and amount of future medical care, without any factual basis.

60.     The medical doctors purportedly dictating the reports are not shown the reports and do not review the representations made therein.  The reports are not provided to the medical doctors for review, due to the false and exaggerated findings therein.

61.     HCFA 1500 billing forms are also generated  at the Defendants' corporate business office.  Block 31 of the forms list either the chiropractor assigned to the clinic or one of the medical doctors as the provider for all treatment.

62.     The CPT treatment coding in these HCFA 1500 billing forms are not selected by physicians or chiropractors at the clinic, but by the business corporate office staff.  The clinic doctors do not have a mechanism or procedure to relay the nature, duration, etc. of the examinations and treatment conducted to the corporate staff generating the billing forms. Thus, the coding decisions, including the determination to bill patient examinations at CPT code levels 99215 or 99214, are made by individuals who have no personal knowledge of the treatment or examination purportedly performed.

63.     Thus, the supposed treating medical doctor of chiropractor plays no role in determining the level or extent of treatment represented in the HCFA form 1500 billings. Likewise, they do not select the fee to be charged.   The HCFA 1500 billing forms are not submitted to the named provider at the clinic for review, due to the false or exaggerated findings therein.

**B.    Metroscan**

64.    The Mantas Clinics routinely refer patients for MRIs and/or CT scans. The referrals are made to Metroscan.

65.    As noted herein above, Metroscan is now, according to 2005 state court testimony of Mantas, an assumed business name of Mantas PA, although Metroscan Imaging L.L.C. was also in existence until recently. However, Facility registration forms filed with the Texas Board of Chiropractic Examiners show Mantas, individually, as Metroscan's sole owner.

66.    In regard to MRIs, Mantas, Mantas PA, or other Defendants own several mobile MRI units. Two are presently operational – one located at the "Six Flags" Mantas Clinic in Arlington, and one at the "Rehab Central " (a/k/a "Medcentra") Mantas Clinic in Dallas.

67.    The CT machine is located at the "Rehab Central" (a/k/a "Medcentra") Mantas Clinic, in Dallas.

68.    Metroscan, whether in the form of a limited liability company or assumed business name, does not maintain an independent office. It does not have its own employees. "MedCentra" or "Associated Medical Provider" employees perform all services for Metroscan, such as document generation, records retention, billing, and acting as custodian of records in records affidavits. Metroscan records are kept in a joint file with the records of the Mantas Clinic, and other entities of the Defendants (such as Tenamed and Neurology Clinic).

69.    Narrative reports are issued under the Metroscan Imaging or Metroscan Radiology name. The reports are virtually always under the name of Bruce Cheatham, M.D.

70.    HCFA 500 billing forms are generated under the Metroscan name, listing Dr. Cheatham as the providing physician. The bills are generated by "MedCentra" or

"Associated Medical Provider" employees. The MRIs or CTs are billed in one global amount. In other words, there is no breakdown between the technical charge for the service purportedly provided by Metroscan and the professional medical evaluation purportedly made by Dr. Cheatham.

**C.    Neurology Clinic**

71.    The Mantas Clinics routinely refer patients for neurological testing, specifically NCV and/or Current Perception Threshold tests. The referrals are made to Neurology Clinic.

72.    No tests aside from NCV and Current Perception Threshold tests have been performed under the name Neurology Clinic during the period at issue. Particulalry, no needle EMG tests are conducted.

73.    Neurology Clinic does not maintain an independent office. It does not have its own employees. "MedCentra" or "Associated Medical Provider" employees perform all services for Neurology Clinic, such as document generation, records retention, billing, and acting as custodian of records in records affidavits. Neurology Clinic records are kept in a joint file with the records of the Mantas Clinic, and other entities of the Defendants (such as Tenamed and Metroscan Imaging).

**1.    NCV Testing**

74.    The NCV test is a non-invasive electrodiagnostic test in which various peripheral nerves on the arms or legs are stimulated with electrical current. The velocity of the response is recorded by electrodes attached to the surface of the skin. The test has no diagnostic value to rule out or determine radiculopathy or radiculitis. A needle EMG test is the appropriate test to determine such conditions. A needle EMG test is an invasive

procedure, which must be performed by a qualified licensed healthcare provider. Needle EMG tests are not conducted under the name of Neurology Clinic, and the Mantas Clinic patients are not referred elsewhere for needle EMGs.

75.     Around May 2002, Defendant Barkhordar and Defendant Dallas Neurogiagnostic [sic] Associates, Inc./Dallas Neurodiagnostic Associates, commenced conducting the NCV tests that are billed under the Neurology Clinic name. Barkhordar actually performs the tests on the patients.

76.     Barkhordar is not licensed in any healthcare profession in Texas. While Barkhordar graduated from Parker Chiropractic College in December 1996, he failed his subsequent attempts to pass the Texas chiropractic board examination to obtain a chiropractic license. Barkhordar is not qualified to conduct the NCV tests, unless under direct supervision of a licensed provider. Barkhordar is not qualified to evaluate the results.

77.     The NCV tests are conducted at the Mantas Clinic located at 7203 John Carpenter Freeway, Dallas, Texas (the "Medcentra" or "Rehab Central" clinic). Since early 2004, this address has also served as the corporate office of Mantas PA/MedCentra/Associated Medical providers. An office is provided at the address for Barkhordar's use. Barkhordar does not maintain an office of his own. Patients from other Mantas Clinics are "tested" at the 7203 John Carpenter Freeway location. In a small number of instances, Barkhordar travels to other Mantas clinics and conducts the NCV tests at those clinics.

78.     One-page narrative reports are generated in regard to the NCV tests. In the vast majority of reports, the signature block has been styled "Reviewing Physician," but is left unsigned. Some reports, apparently issued in 2002, bear the signature of Barkhordar's purported former partner in Dallas Nuerodiagnostic Associates, Inc., Arash Sarabi, D.C.

79. These reports contain sections for patient history, range of motion tests, imaging summary, "Interpretation," "Impression," and/or "Recommendations."

    a.    In a March 30, 2005 deposition on written questions of Neurology Clinic, questions were propounded in regard to the identity of the person who interpreted the NCV study at issue and prepared the report, and the person's qualifications. The "MedCentra" employee acting as 'custodian of records' for Neurology Clinic identified "Dallas Neurodiagnostic Associates" as the 'person' that interpreted the study and prepared the report, and also identified Barkhordar as "Dr. B Farshad Baruhurdar." In a September 15, 2005 state court deposition, the employee testified Barkhordar provided her the information for these answers.

    b.    In contrast, in July 12, 2005 state court deposition testimony, Barkhordar denied that any part of the narrative report was his work product. He testified that he, or MedCentra/Associated Medical Providers employees, transcribed the reports from Mantas' handwritten notes. Barkhordar testified that, at previous times, Dr. Sarabi prepared the entire report.

    c.    However, in later September 28, 2005 state court deposition testimony, Barkhordar admitted all the portions of the reports, except the "Impressions" portion, were his work product. The sections Barkhordar admitted were his work product include the "Interpretation" section of the report.

    d.    The Impressions portion of the reports (i.e., the one section Barkhordar has testified are **not** his work product) are brief general statements of supposed conditions. These are generally single sentences, such as, "Right Lumbar

Radiculopathy," "Left Sided Cervical Radiculitis," "Bilaterial Lumbar Radiculapathy Not Including the S1 Nerve Root," etc.

e.   In his September 28, 2005 state court deposition testimony, Barkhordar claimed that Mantas, and previously Sarabi, completes the "Impressions" portion of the NCV narrative report. However, in her September 15, 2005 state court deposition, the Nuerology Clinic 'custodian of records' testified that Barkhordar (who provided her the answers for a written deposition concerning who conducted and evaluated the tests) never told her that Mantras was involved in the NCV tests.

80.   The reports do not identify Barkhordar as the person conducting or evaluating the tests. The reports do not reference Barkhordar, or Dallas Neurodiagnostic Associates.

81.   The reports often represent the existence of radiculopothy or radiculitis. Such findings are baseless because, among other matters:

a.   No EMG is conducted, and the misdiagnosis are based solely on the 'F wave response' of the NCV test. Such a diagnosis requires performance of an EMG.

b.   An inadequate number of F waive trial responses are performed, rendering the tests invalid for even a suspicion of radiculopathy.

c.   Diagnoses are made that are not supported by the test, or are contrary to the tests.

d.   Test data, such as whether F waves are present, is misrepresented in the narrative report.

82.     Neurology Clinic HCFA 1500 billing forms are generated by "MedCentra" or "Associated Medical Providers" employees.

83.     Block number 31 of the HCFA 1500 billing forms, for the signature of the physician or supplier, contains the printed name of medical doctors at the Mantas Clinics, such as Sami Hanna, M.D., Robert Cassella, M.D., or Burt Hyde, M.D.  However, these physicians are not present at the NCV testing, and do not supervise Barkhordar.  In almost all cases, the physicians listed on the HCFA 1500 form were not at the physical address where the test was conducted, at the time of the test.

84.     Mantas or Mantas MD, PA pay Barkhordar and Dallas Neurogiagnostic Associates, Inc./Dallas Neurodiagnostic Associates, Inc. $100 or $125 per test.  The payments, on information and belief, are made through the "MedCentra" or "Associated Medical Providers" assumed business names.  Mantas and/or Mantas MD, PA collect the NCV testing fee, and receive the balance of the bill for the NCV testing.

## 2.     Examinations

85.     Often, there are additional examination charges often billed on Neurology Clinic HCFA 1500 billing forms, such as office visit examinations billed under CPT codes such as 99213, and range of motion (ROM) examinations billed under CPT Code 95831.

86.     The examinations are either not conducted, or are conducted by Barkhordar.  There is no documentation generated in regard to the purported examinations.

## 3.     Current Perception Threshold Testing

87.     The Current Perception Threshold test is also a non-invasive purported electrodiagnostic test in which various peripheral nerves are stimulated with electrical current.  The Current Perception Threshold test has no diagnostic value.

88.    On information and belief, the tests are conducted at the various Mantas Clinics.

89.    A report is generated for the test, which includes a narrative section. However, the report does not set forth the name of any provider purportedly conducting the test or evaluating the test results. On information and belief, the Current Perception Threshold tests are 'conducted' by unqualified Mantas Clinic office personnel.

90.    As with the NCV tests, the Current Perception Threshold tests are billed in "Neurology Clinic" HCFA form 1500s. These purport that the tests were conducted at Neurology Clinic, at 7203 John Carpenter Freeway, in Dallas. As noted hereinabove, these billing forms list the name of medical doctors working at the Mantas clinics, such as Dr. Burt Hyde or Dr. Sami Hanna, as the "physician or supplier" in regard to the tests. In reality, these physicians do not conduct or evaluate the worthless tests, or supervise the persons who do.

**B.    Tenamed**

91.    The Mantas Clinics routinely 'prescribe' a "TENS" unit or electrical stimulation unit to the patient for home use.

92.    The units are provided by Tenamed. As noted herein above, pursuant to Mantas' state court testimony, Tenamed is an assumed business name of Mantas PA.

93.    Tenamed does not maintain an independent office. It does not have its own employees. "MedCentra" or "Associated Medical Provider" employees perform all services for Tenamed, such as billing and collection. Mantas has admitted in state court deposition testimony that Tenamed does not maintain its own financial account.

94.    Records concerning Tenamed are kept in a joint file with the records of the Mantas Clinic, and other entities of the Defendants (such as Neurology Clinic and Metroscan

Imaging). The records are sparse, consisting only of a 'prescription' from the Mantas clinic for the device and a HCFA 1500 billing form.

95.     The HCFA 1500 billing forms for Tenamed generally show a charge of $595.00 for the TENS units provided to the patient.

96.     The HCFA 1500 billing forms for "Tenamed Medical," show a charge of $895.00 for the electrical stimulation units provided to the patient. The billings also show a charge of $85.00 for "supplies" for the unit. At times, there is a 'set up' fee charged as well.

97.     The electrical stimulation units provided to the Mantas Clinic patients are obtained by Defendants in mass. Units purchased in this manner man generally be obtained for less than $55.00 apiece. That price includes the supplies provided with the unit. The unit is powered by a nine-volt battery, and requires no set up.

98.     At times, Block 31 of the "Tenamed" HCFA 1500 billing forms have listed "Tenamed Medical Equipment," "Medical Equipment," "Tenamed Medical MD," etc. However, the majority of the HCFA 1500 billing forms for "Tenamed Medical," as those for Neurology Clinic, list the name of a medical doctor at the Mantas Clinics, such as Dr. Hyde, Dr. Manna, or Dr. Buentipo.

99.     These medical doctors have no knowledge of the type of units that are provided to the patients, the nature or quality of the units, the charges for the unit or, apparently, that their names are being used on the HCFA 1500 billing forms.

100.    The nature and therapeutic value of the unit provided is misrepresented in the HCFA 1500 billing form, as the charge for the unit is commensurate with higher quality, more capable equipment.

## C.    Representations by Defendants

101.    Mantas, Mantas PA, Red Apple, Alcman Management, Ltd., and/or other Defendants, through their assumed businesses names, provide copies of records and billings, including those of the Mantas Clinics, Metroscan, Neurology Clinic, Orthopedic Clinic, and Tenamed, to personal injury attorneys (with knowledge that the documents will be submitted in support of claims submitted to Plaintiffs) and/or directly to automobile insurers.

102.    Defendants know that the records and billings generated will be used to support personal injury claims against automobile insurers, including Plaintiffs, and their insureds. Defendants intend for Plaintiffs and other insurers to rely on the representations made in these documents, and pay sums in settlement of the claims.

103.    The records and billings provided include:

(1)    HCFA form 1500s under the facility names of the Mantas Clinics, representing the course of treatment was reasonable and necessary, and that extensive examinations were conducted, at the commencement and conclusion of the course of treatment and at points during the course of treatment.

(2)    Narrative reports under the names of the Mantas Clinics, representing treatment was reasonable and necessary, and matters such as the need for future treatment, testing, and surgery and the costs of future treatment.

(3)    Other documents under the names of the Mantas Clinics, representing that referrals for diagnostic testing were reasonable and necessary.

(4)    HCFA form 1500s and narrative reports under the name of the Metroscan, representing CT scans and/or MRIs were reasonable and necessary.

(5)    HCFA form 1500s under the facility names of Tenamed and Neurology Clinic, representing the testing, examinations, and supplies billed were of a particular type or quality and were reasonable and necessary.

(6) HCFA form 1500s and reports under the facility name of Neurology Clinic, representing NCP tests are conducted and evaluated by health care professionals qualified to do so.

(7) HCFA form 1500s and reports under the facility name of Neurology Clinic, representing Current Perception Threshold tests are effective diagnostic tests, and that the purported tests were conducted and evaluated by health care professionals qualified to do so.

(8) Documents styled "Doctor's Prescription: Letter of Medical Necessity," prescribing electrical stimulation units, opining "the unit is reasonable and necessary."

(9) Medical/Chiropractic notes representing referral for NCP and Current Perception Threshold tests are reasonable and necessary.

104. Defendants also attach the above described records and billings to business records affidavits and affidavits of reasonableness and necessity of service, provided on request of personal injury attorneys and filed with Texas state courts pursuant to Texas Rule of Evidence 902(10(a) and Section 18.001 of the Texas Civil Practice & Remedies Code. These affidavits are completed by an employee of "Medcentra" and/or "Associated Medical Providers," who has no knowledge of how the records are generated and maintained, and is therefore not qualified to act as a custodian of records competent to execute the affidavits.

## VI.
## COMMON-LAW FRAUD

105. Plaintiffs incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 104 above.

106. As described above, Defendants have made false and fraudulent commissions of fact to Plaintiffs and other automobile insurance companies, including:

a.    false and misleading statements in regard to the rendition and reasonableness and necessity of chiropractic modalities.

b.    false and misleading statements in regard to the reasonableness and necessity of neuromuscular reeducation, and that neuromuscular reeducation was actually conducted.

c.    false and misleading statements in regard to the necessity, duration, and nature of chiropractic and medical examinations, which are billed at 99213, 99214 and 99215 levels by corporate office 'report writers' who have no first hand knowledge of the nature of examinations, if any, performed.

d.    false and misleading statements in regard to the reasonableness and necessity of "exercises."

e.    false and misleading statements in regard to the reasonableness and necessity of neurodiagnostic tests and related examinations.

f.    false and misleading statements in regard to the rendition of neurodiagnostic tests and related examinations, the nature of the testing and testing procedures, and the existence of neurological defects or injury.

g.    false and misleading statements in regard to the qualifications and identity of the individuals referring patients for neurodiagnostic tests, and conducting the tests and related examinations.

h.    false and misleading statements in regard to the reasonableness and necessity of other diagnostic tests, specifically MRIs and CTs.

i.    false and misleading statements in regard to the reasonableness and necessity of "TENS" and electrical stimulation devices.

j.      false and misleading statements in regard to the nature of "TENS" and electrical stimulation devices prescribed to patients.

k.      false and misleading statements in regard to the reasonableness and necessity of electrical stimulation device 'supplies' and 'set-up' services.

l.      False and misleading statements that future medical care, diagnostic testing, or surgery will be required.

m.      False and misleading statements in regard to the supposed costs for purportedly required future medical care.

107.    As described above, Defendants directed automobile accident patients through a pattern of referrals and treatment, regardless of the patients' symptoms or apparent injury. The referrals are made among the various Defendants and their business entities. Standardized chiropractic and medical narrative reports are generated. The narrative reports contain false and unsupported findings of serious injury, impairment, and future medical/chiropractic needs and costs.

108.    In short, the treatment, diagnostic testing, and other referrals are not based on reasonable and necessary treatment of the patient, but on maximizing profit for the Defendants by referrals for the procedures and tests, and to encourage personal injury lawyers to continue to refer patients to Defendants.

109.    The misrepresentations made by Defendants to Plaintiffs were material in that Plaintiffs relied on such representations to determine the settlement of claims made against them and their insureds.

110.    When Defendants made such false and fraudulent misrepresentations, they were aware of the falsity of such misrepresentations.

111.    Defendants made the misrepresentations with the intent to deceive Plaintiffs and other insurance companies and with the intent that Plaintiffs and other insurance companies act on the misrepresentations by paying sums of money in settlement of the fraudulent claims made regarding the automobile collisions at issue.

112.    Plaintiffs relied on the above misrepresentations in evaluating the bodily injury claims made by patients of the Mantas Clinics, and thereby suffered damage by paying money to Defendants for fraudulent and inflated health care treatment.

113.    Defendants also intentionally concealed and failed to disclose material facts within their knowledge, knowing that Plaintiffs were ignorant of those facts; specifically, that chiropractic, medical, and other healthcare bills and related records reflected services that were not reasonable or necessary, and that all entities to which patients were referred were financially tied to one or co-owned.

114.    As a direct and proximate result of Defendants' conduct, Plaintiffs have paid sums in connection with the fraudulent treatment, billing, and referral practices arising from automobile collisions in which the claimant went to a Mantas Clinic.

115.    Plaintiffs are also entitled to consequential damages and punitive damages in an amount to be determined at trial.

## VII.
## COMMON-LAW CONSPIRACY

116.    Plaintiffs incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 115 above.

### A.    Conspiracy to Defraud

117.    Continuing from January 2001 to the present, Defendants willfully combined, conspired, and agreed with each other and others to defraud Plaintiffs. Defendants, in

combination with themselves and others, knowingly made false and misleading statements in regard to the existence, nature, and severity of the supposed soft tissue injuries allegedly attributable to the automobile collisions at issue, and the rendition and reasonableness and necessity of examinations, medical consultations, treatments, MRIs, CTs, NCVs, Current Perception Threshold tests, and other testing procedures purportedly provided to automobile accident claimants who went to the Mantas Clinics.

118.    Defendants, in state court depositions, have made misleading statements to conceal the activities of the conspiracy.

119.    The object of the conspiracy was to defraud Plaintiffs and other insurers of millions of dollars. There was a meeting of the minds and agreement on this course of action by each Defendant, and each Defendant played a specific role in the overall scheme to defraud Plaintiffs and other insurers. The Defendants, separately or in concert with other Defendants and/or other parties, committed overt, unlawful acts in furtherance of this course of action, namely referring automobile collision claimants to one another for unreasonable and unnecessary examination, treatment or continued treatment, and/or tests, and generating documentation, such as narrative reports and HCFA-1500 billing forms, substantiating the unreasonable and unnecessary treatment and tests.

120.    The false and fraudulent misrepresentations and omissions alleged above were made by Defendants and others with the purpose and intent to deceive Plaintiffs and to induce Plaintiffs to pay Defendants large sums of money to which they were not legally entitled.

121.    As a direct and proximate result of Defendants' conduct, Plaintiffs have paid sums in regard to the fraudulent treatment, billing, and referral practices arising from automobile collisions in which the claimant went to a Mantas Clinic.

122. Plaintiffs are also entitled to consequential damages and punitive damages in an amount to be determined at trial.

**B.    Conspiracy to Violate Health Care Statutes, and Common Law Prohibitions concerning the practice of Medicine and Chiropractic**

123. Continuing from January 2001 to the present, and continuing through the present time, Defendants willfully combined, conspired, and agreed with each other and others to violate Texas law concerning healthcare practices and the unauthorized practice of medicine and chiropractic. Defendants, in combination with themselves and others, knowingly created and/or participated in an enterprise of interrelated persons and entities.

124. The object of the conspiracy was to enrich the conspirators, at the expense of Plaintiffs and other insurers. There was a meeting of the minds and agreement on this course of action by each Defendant, and each Defendant played a specific role in the overall scheme to violate healthcare laws. The Defendants, separately or in concert with other Defendants and/or other parties, committed overt, unlawful acts in furtherance of this course of action, namely:

      a.    Referring patients for NCV tests to an unlicensed individual, who is not authorized or qualified to conduct the tests and accompanying medical examinations, and issuing narrative reports and HCFA 1500 billing forms based on the tests and examinations.

      b.    Referring patients for Current Perception Threshold tests to an unlicensed individual, who is not authorized or qualified to conduct the tests, and issuing narrative reports and HCFA 1500 billing forms based on the tests.

      c.    Submitting to third party payors HCFA 1500 billing forms reflecting examinations coded under examination codes 99243, 99244, and 99245.

> The medical doctors or chiropractors do not select these codes, which are in fact selected by unlicensed persons with no factual knowledge of the nature and extent of any examination that might have been performed.
>
> d. Submitting to third party payors medical and diagnostic medical reports, which include matters such as diagnosis, purported future medical needs, and purported future reasonable medical costs, that are generated by lay persons, and not based on information or input from licensed providers.

125. The above acts constitute violations of Texas law concerning the unauthorized practice of medicine and chiropractic, and assistance of unauthorized practice.

126. The acts and conduct alleged above were made by Defendants and others with the purpose and intent to circumvent Texas law, and to receive large sums of money from Plaintiffs to which they were not legally entitled.

127. As a direct and proximate result of Defendants' conduct, Plaintiffs have paid sums in regard to treatment, billing, and referral practices which violate Texas law.

128. Plaintiffs are also entitled to consequential damages and punitive damages in an amount to be determined at trial.

## VIII.
## REQUESTS FOR DECLARATORY RELIEF

129. In addition to the causes of action brought above, Plaintiffs request the following declaratory relief:

130. Plaintiffs incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 129 above.

131. As set forth above, patients of the Mantas Clinics are routinely referred for NCV and worthless Current Perception Threshold tests, which are billed under Neurology

Clinic. As also noted above, the tests are performed by unqualified and unlicensed individuals.

132. In regard to the Current Perception Threshold tests, on information and belief, the tests are merely conducted by Mantas Clinic office personnel.

133. In regard to NCV tests, the tests are conducted by Barkhordar, who is not licensed or qualified to conduct them, and has in fact failed his attempts to obtain a chiropractic license in Texas. In addition to the tests, Barkhordar conducts examinations, which he is not licensed to perform.

134. Plaintiffs would further respectfully show that this matter is ripe for declaratory relief, and that the Court's determination of the issues presented will conclusively resolve the questions of Defendants' duty to pay sums to Defendants in regard to purported services conducted by Neurology Clinic and their rights to reimbursement for sums previously paid.

## IX.
### UNJUST ENRICHMENT

135. Plaintiffs incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 134 above.

136. As described above, Defendants have made false and fraudulent commissions of fact to Plaintiffs, in regard to the existence, nature, and severity of supposed soft tissue injuries allegedly attributable to automobile collisions, and willfully combined, conspired, and agreed with each other and others to defraud Plaintiffs.

137. As described above, Defendants are in violation of numerous statutes enacted by the State of Texas in regard to healthcare matters such as referrals for remuneration, disclosures of joint interest and ownership, overtreatment, and the unauthorized practice of medicine.

138.   Defendants have obtained a benefit from Plaintiffs, namely the payment for chiropractic, diagnostic, and medical expenses that were unreasonable and unnecessary, and designed to enrich Defendants at Plaintiffs' detriment.  Not only was the benefit gained by fraud, but it was gained through the willful violation of Texas statutes.

139.   As a direct and proximate result of Defendants' conduct, Plaintiffs have paid sums, and Defendants have been benefited from those payments, in connection with the unnecessary and unreasonable treatment, billing, and referral.

## X.
## SINGLE BUSINESS ENTERPRISE DOCTRINE

140.   Plaintiffs incorporate, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 139 above.

141.   Plaintiffs would show that the following entities constitute a "single business enterprise" as defined by Texas law: Michael Mantas A. Mantas, M.D., P.A., Red Apple, Alcman Management, Ltd., Alcman Corp., Althkos, Inc., and Metroscan Imaging, L.L.C.

142.   Plaintiffs would show, among other matters, that the above named entities:

    (1) share or have shared common employees;

    (2) share or have shared common officers;

    (3) share or have shared common offices;

    (4) share or have shared common business names or assumed business
        names; and

    (5) services are or have been rendered by the employees of one entity on
        behalf of another entity.

143. Pursuant to the Single Business Enterprise doctrine, these entities have integrated their resources to achieve a common business purpose. Therefore, in addition to any individual liability for particular acts as set forth further in this complaint, the members of the Single Business Enterprise are jointly and severally liable for the acts and liabilities of the other constituent entities.

## XI.

144. Since January 2001, the Defendants have generated billings in regard to patients asserting claims against Plaintiffs, or Plaintiffs' insureds, in the approximate amount of 1.8 million dollars. Defendants should be disgorged of all revenue they obtained from Plaintiffs in the fraudulent scheme.

## XI.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs **Allstate Insurance Company, Allstate Indemnity Company,** and **Allstate Property & Casualty Insurance Company,** respectfully request that upon final trial of this cause, the Court enter a judgment as follows:

(1) A declaration that the tests and examinations billed under the name Neurology Clinic are illegal billings, as the services were conducted by an unlicensed and unqualified provider, and that Plaintiffs are entitled to reimbursement for all such costs;

(2) Judgment in favor of the Defendants for damages arising from the billing of unreasonable and unnecessary healthcare services by Defendants, or for the billing of 'services' performed by unlicensed or unqualified individuals;

(3) Judgment that Defendants disgorge to Plaintiffs all amounts received by Defendants from Plaintiffs, in regard to the above referenced billings;

(4)   Exemplary damages in an amount to be determined by the finder of fact; and

(5)   Granting such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted;

DAVID KASSABIAN
**TEXAS STATE BAR NO. 11105600**
**BRET WEATHERFORD**
**TEXAS STATE BAR NO. 20998800**

**KASSABIAN, DOYLE,**
    **WEATHERFORD, P.C.**
1521 North Cooper Street
Suite 650, LB 21
Arlington, TX  76011
(817) 460-5099 (Local)
(817) 461-8855 (Metro)
(817) 274-9863 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company

## DEFENDANTS

Michael Mantas, M.D., Michael A. Mantas, M.D., P.A. d/b/a Neurology Clinic, et al

**(b)** County of Residence of First Listed Plaintiff    Cook County, Illinois
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Dallas County, Texas
(IN U.S. PLAINTIFF CASES ONLY)

NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**ORIGINAL**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David Kassabian, Kassabian, Doyle & Weatherford, P.C., 1521 N. Cooper, Ste. 650, L.B. 21, Arlington, Texas 76011, 817/461-8855

Attorneys (If Known)

**3 0 6 - C V 1 0 6 7 - K**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☒ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause: Fraud, conspiracy and request for declaratory relief.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ over 75,000

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)

JUDGE

DOCKET NUMBER

DATE 6/16/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG JUDGE